A90A0222. CAMPBELL v. HOSPITAL AUTHORITY OF COBB COUNTY et al.
(393 SE2d 480)

BANKE, Presiding Judge.

This is an appeal by the plaintiff from a judgment for the defendants in a medical malpractice action. The plaintiff brought her

10-month-old daughter to the emergency room at Cobb General Hospital at 12:55 p.m. on January 30, 1981, with complaints that she was suffering from a fever and a rash. The child was examined by defendant Grantier, who was on duty as the attending emergency room physician at the time, and was released at 2:25 p.m. with a diagnosis of "probable chicken pox." At trial, Dr. Grantier conceded that he "suspected that it was a possibility" that the child might have meningococcemia, a virulent disease which, unlike chicken pox, is uniformly fatal if not treated with antibiotics during its early stages; however, he stated that he "firmly believed it was chicken pox."

According to the written emergency room record, the instructions given to the plaintiff upon the child's release from the emergency room were to administer Benadryl (an antihistamine) for itching, to administer Tylenol and fluids for fever control, and to consult her pediatrician "as needed." However, Dr. Grantier testified that he also gave the plaintiff verbal instructions to bring the child back to the emergency room "if that rash changed in any way." The child was brought back to the emergency room approximately 12 hours later, at which time she was correctly diagnosed by her pediatrician as having meningococcemia. However, the disease had by then progressed too far to respond to antibiotic treatment, and she died several days later. At trial, the plaintiff sought to prove that the child's death was caused by Dr. Grantier's professional negligence in releasing her from the emergency room without either eliminating meningococcemia as a possible source of her symptoms or treating her for that disease. The hospital was alleged to be vicariously liable under agency principles. *Held*:

1. The plaintiff contends that the trial court erred in not directing a verdict in her favor on the issue of proximate cause, in charging the jury on proximate cause, and in failing to give her requested jury charges eliminating the issue of proximate cause from their consideration. These enumerations of error are based on the contention that the evidence conclusively established (1) that the child would have survived had she been treated for meningococcemia at the time Dr. Grantier examined her and (2) that there was no intervening negligence on the part of the plaintiff or anyone else to break the chain of causation. However, even assuming arguendo the truth of these contentions, it does not follow that the issue of proximate cause was eliminated from the case, for the expert testimony in the case undisputedly created a jury issue as to negligence; and the two concepts are inextricably intertwined. "Negligence which is the proximate cause of an injury is such an act [or omission] that a person of ordinary caution and prudence would have foreseen that some injury might likely result therefrom." *Harris v. Hardman*, 133 Ga. App. 941, 942 (212 SE2d 883) (1975). Obviously, if Dr. Grantier was

not negligent in his diagnosis and treatment of the child, then such negligence on his part was not the proximate cause of the child's death. This enumeration of error is without merit.

2. The plaintiff contends that the trial court erred in refusing to allow him to propound the following hypothetical question to Dr. Grantier's expert on cross-examination: "I just want you to assume the following simple set of facts: That a doctor has said that he suspected meningococcemia, on the one hand. He suspected chicken pox on the other. *That he could not reconcile in his own mind which of the two they were*, and discharged the child from the emergency room under that set of circumstances in his own mind. Now Doctor, would you tell me, please, whether you think that is within the standard of care or not?" (Emphasis supplied.) Dr. Grantier objected to this question on the ground that it misstated the evidence, and the trial judge sustained the objection "as not including the facts in evidence that are necessary."

The objection that the question misstated the evidence was well taken. Although, as previously indicated, Dr. Grantier acknowledged having suspected meningococcemia as a possibility, he testified that he "firmly believed" the decedent was suffering from chicken pox. Thus, the assumption that "he could not reconcile in his own mind which of the two they were" was at variance with the evidence, rendering the question improper. See *Biggs v. McDougall*, 175 Ga. App. 87, 88 (332 SE2d 381) (1985); *Smith v. Luckett*, 155 Ga. App. 640 (2) (271 SE2d 891) (1980).

3. The plaintiff contends that the trial court erred in charging the jury that a doctor does not guarantee the results of treatment and that the fact that treatment is different in its outcome from that expected does not establish nor support an inference of lack of care. The plaintiff does not contend that the charge in question was an incorrect statement of the law in the abstract but argues that it was not adjusted to the evidence because Dr. Grantier's alleged negligence was not in failing to provide *proper* treatment for meningococcemia but in failing to provide *any* treatment for that disease at all. We find this contention to be without merit. The central issue being litigated in the case was whether Dr. Grantier was negligent in his treatment of the decedent, and the charge clearly did address that issue.

4. At the close of the evidence, the court charged the jury that Dr. Grantier had a duty, arising from the doctor-patient relationship, "to disclose [the decedent's] condition to her mother as he knew it." During their deliberations, the jury sought clarification of the nature of this duty, asking the court: "Does the doctor have to disclose what he suspects or only what he knows prior to releasing the patient?" Rejecting requests by the plaintiff for an instruction that a physician is under a duty to disclose any harmful medical condition which he

has any reason to suspect might exist, the court again charged the jury that Dr. Grantier had a duty to disclose the child's condition to the plaintiff and further charged them as follows: "And in regard to your question concerning what he suspects, it will be a question for you, the jury, to determine in the case as to whether or not there was a duty upon the doctor to disclose what he suspected to the patient in this case, taking into consideration all the facts and all the circumstances surrounding the case, and taking into consideration the medical expert testimony on that issue in the case."

We find no error. Whether Dr. Grantier's awareness or suspicion of the possibility that the child had meningococcemia was of such strength that it should have been communicated to the decedent's mother or otherwise acted upon was for the jury to determine, and to have given the instructions requested by the plaintiff would have been tantamount to directing a verdict on the issue.

*Judgment affirmed. Birdsong and Cooper, JJ., concur.*

DECIDED APRIL 5, 1990 —
REHEARING DENIED APRIL 19, 1990 — 

*Bedford, Kirschner & Venker, Thomas J. Venker, Andrew R. Kirschner, Jackson Bedford, Jr.,* for appellant.

*Sams, Glover & Gentry, Jerry L. Gentry, Downey, Cleveland & Parker, Lynn A. Downey, Russell B. Davis,* for appellees.